3. 16-0608 People of the State of Illinois Appellant by Mark Austell v. Nicholas Hennenfent Appellee by Cyril Buggs Jr. May it please the Court, Counsel. In this case, the trial judge relied on his own independent investigation when granting defendant's motion to suppress, and the trial judge's factual findings were against the manifest weight of the evidence. The trial judge engaged in a private investigation by obtaining images and measurements from a Google website, which the judge relied on when granting defendant's motion to suppress, and which the judge included in his written order. The trial judge's motion was to suspend the defendant for a violation of Section 11804B, which requires that a driver signal a turn not less than 100 feet before a turn in a business or residential district, and not less than 200 feet before the turn outside a business or residential district. A judge may take judicial notice of approximate distances between two locations and that a city is located within a particular county, but a judge may not take judicial notice of a precise location within an area. The trial judge improperly relied on the Google Street View image that was not presented at the motion hearing as evidence of a precise minimum distance from the turn that defendant had activated his turn signal. Regarding defendant's first left turn onto 3rd Street, in his order the trial judge stated, no measurements were made but the court's best estimate based on observation of the video and compared with Google's estimate of 50 feet, confirms that the defendant in fact used his signal in an appropriate manner in more than 100 feet from the intersection. Therefore, the judge's own written order shows that he relied on the Google Street View that was not offered or admitted into evidence, but that the judge obtained from his own private investigation to determine the distance from the first turn that defendant had activated his signal. Thus, on this basis alone, the trial judge's grant of defendant's motion to suppress must be reversed. He does say based on the observation of the video. Yes, that is correct, Your Honor. The second ground for reversal is that the trial judge's factual findings were not supported by the contents of the video or against the manifest weight of the evidence. You know, more and more courts are taking judicial notice of things like this. You know, Illinois Rule of Evidence 201 is not the judicial notice. It is. And, you know, there are comments about that. The reply brief, I mean, the answer brief refers to the federal Rule of Evidence 201, but we have an Illinois Rule of Evidence 201. And there are more and more courts looking at judicial notice of some of these observable facts. Justice Posner loves referring to, or I should refer to that in the past tense, to take notice of things he finds on the Internet, be found on the Internet. Correct? That's accurate, Your Honor. And you are quite right that more and more courts are using sources that are generally unimpeachable, so to speak, that are found on the Internet. And a judicially noticed fact, though, must be subject to reasonable and must not be subject to reasonable dispute. And in this case, the actual fact of the 100-foot signal was reasonably disputed, and the judge used that Google image to say that, well, it was beyond the 100-foot distance. Personally, I did not see the, you mentioned there was a 50-foot mark at the right corner of the map, or the image, rather, that was shown in the order, and I personally could not find that. But I have gone on myself to the website, and there is a one-inch rule that says 200 feet on the current version of it. I don't know what it was at the time the judge looked at it. But then the images are subject to change. You can enhance those images to make them larger, smaller. So what is the standard when you're looking at a Street View image? Where is that 50-foot or the 200-foot, whatever it happened to be? What image are you looking at when that's accurate or what we presume to be accurate? And that's something that there was no discussion of in his order whatsoever. How good was the judge's eyesight? I have no idea, Your Honor. I haven't met the judge myself. Regarding that second ground for reversal, regarding the first turn at the intersection of Academy and third at the railroad tracks, the trial just stated that the defendant had signaled his turn before he stopped prior to the tracks. The defendant then moved forward across the tracks and made a proper turn. But the video shows that the defendant first stopped, and then he activated his turn signal. The judge found that the officer was 350 to 500 feet back when the defendant turned left. But there was no evidence presented to support this finding, and the wide range between the two distances given by the judge shows that the judge's finding was a guess. It was late at night after 1 o'clock in the morning on January 30th. That video is extremely dark in the initial, where the initial turn is at third. So there's just no way for the judge to have determined an accurate distance from that particular video. Assuming, Your Honor, that the defendant had properly activated his signal when he made his first turn, he clearly did not do so before making the second turn at the intersection of Fourth and Seminary Streets. The intersection there is much more brightly lit on the video, and the officer is following closely behind the defendant at this point. The video shows that the defendant did not activate his turn signal until he was no more than three car lengths from the stop sign, which is well under the minimum distance of 100 feet required under 804B. Therefore, defendant did commit a signal violation at the second intersection. In his order, the judge assumed that the officer had not specifically mentioned this violation to defendant because defendant had signaled appropriately and the trial judge wrote that this conclusion is supported by the tape. The people cited on pages 11 through 12 of our brief shows that an officer does not have to inform the defendant of the reason for the stop and that this is not relevant to whether the officer had reasonable suspicion to stop the defendant. The video refutes the trial judge's finding that the defendant signaled beyond 100 feet before making his second turn. The people ask this Court to reverse the trial judge's grant of the defendant's motion to suppress, and we ask for a remand for trial under merits before a new judge. Thank you. Thank you, Counsel. Counsel. Will it please the Court and the Justices? Well, first of all, I'd like to comment that as far as I know, Judge Shiblett does not wear glasses. But I want to mention a couple of things. I don't know whether he should wear glasses. Well, that could be to your honor, but apparently he doesn't. I think where the big problem here is the appellant misunderstands the Court's ruling. First of all, the Court never said it based its decision on the Google Maps. The Court made it clear no measurements were made, and that's another point, no measurements were made. But the Court's best estimate, based on his observations of the video and compared with Google's estimate of 50 feet, confirmed that the defendant in fact used the signal in an appropriate manner more than 100 feet from the intersection. Now, there's two facets to this. First of all, your honor, your honors, he didn't base his decision on the Google Maps. He based it on the video. He used it for comparative purposes. That's the first point. Well, what you just read said, confirmed. After he said, read that again. He said no measurements were made, but the Court's best estimate, based on his observations of the video, and compared. And compared. And then with Google's estimate, confirmed that the defendant. So he used the Google Maps to confirm a decision he had already made. And particularly, and I think the Court made a reference to this, there is a growing consensus in the judicial system that courts can consider certain facts outside of the record. If the facts fall into certain categories, or they can be accurately or relatively determined from sources whose accuracy cannot reasonably be questioned. Federal Rules of Evidence 201. Common types of facts which courts take judicial notice is matters of geography. And I cite a lot of your article, Trial by Google, that there's three tests of what when you use an outside source. The first test is knowledge of the subject matter. The second test is independence from relevant bias. And the third test is incentive to ensure accuracy. So basically. One of the factors when you consider judicial notice is one of the parties asked for its admission. Which party asked for its admission in this case? Well, none of the parties asked for its admission. But the court doesn't necessarily need one of the parties to ask for its admission. Because there's a growing, first of all, the evidence is accurate. It's correct because of the fact that there's an incentive for it to be correct. It's independent from relevant bias. It has a commercial incentive. So basically there's three factors here, and it follows all three factors. But I don't. I think it's very important that every presumption will be a court of the trial court that it considered only admissible evidence in reaching its conclusion. Admissible evidence, obviously in this case, is the video. What he's fighting about is something that was used for comparative purposes. So I think that's extremely important. The other case here, which is different than what he basically states, is there's a philosophy now where what they call legal realism, whereas we cannot, when we have an indeterminate fact, and this is in the handbook of jurisprudence, we have an indeterminate fact. Here there were no measurements. The courts in that case, to give more credence to their decision, has to rely on some independent source. Because there were no measurements here. So the court, in other words, to make the decision more realistic and to look at the decision and try to confirm it, the court needs to go beyond what's an indeterminate fact to a determinate fact. And this is extremely important because what happens is there's an argument, and it was in one of the Timothy Endicott. It's basically the reliable resources brings determinacy and deliberation to the court. If adjudication is a poor method for finding objective truth and a necessary evil, we must develop a picture of the trading role of courts as a potentially valuable feature of the rule of law. So Judge Posner, I think the court had mentioned this, used such a philosophy. And the legal realism basically is that there was an inaccessible de facto fact. De facto inaccessible fact here. That Judge Shiplet used the rule to bring determinacy to the conclusion he'd already made. So basically, in the case of Hampton v. Wyatt also I cited, that a good judge confirms that when a good judge does independent research, there is a risk of error. But judges with some initiative probably err at lower rates than judges who believe that the briefs cover everything worth considering. Courts frequently decide cases on lines of reasoning that can't be found in the briefs. Now we get to the interesting part of this as to why the officer stopped the defendant in the first place. And what I feel the danger here is, is that the officer says he stopped him, not for the turn signal, but for an improper turn in the intersection, a stutter stop at the intersection. If this decision, basically, if we are not successful in this, this means that somebody can play a take back, see an infraction that the defendant makes, even though the police officer at the time didn't even see it, and we can go back and find something. That makes our probable cause by the officer into mere sham. Because he could go back and look at the tape and say, oh, by the way, I told him that's the reason I stopped him in the first place was this. But you know what, we played that tape back and we found something else. That would make a sham of our probable cause in the state of Illinois if this would be allowed to be upheld. Because this gives the police officer an opportunity to create a case after the fact by reviewing the video. So there was never at any time did that police officer state that the reason he stopped him was for an improper turn signal. He said he made an improper turn. He even commented to his passenger. And that's when he started the chase. He never mentioned anything until he went to court that he made an improper turn. Well, certainly we had an opportunity to sit around and analyze this video. And then he says, oh, well, that must have been a mistake. The reason he said he made an improper turn signal, that must have been a mistake. Well, if that's the case, he's either stopping him for an erroneous reason, or the officer's lying, or it's fictitious. There wasn't a probable cause to make this stop. There wasn't a reasonable suspicion. So we would make our entire doctrine in Illinois a sham to allow the police officer to review the video. Let me ask you, were these turn signal violations before or after the stutter stop? They were after the stutter stop. So do you think if the officer made up his mind to stop, the first was a stutter stop, and then by the time he gets him stopped, he sees two or three more violations, he's got to list every one of those to the driver when he stops him? But, Your Honor, that's not the issue here. The issue is he never said that that was the reason why he stopped him. He said the reason why he stopped him was a stutter stop. What if he would have stopped him because of the stutter stop, regardless of whether he had signaled or not signaled? Well, the court found in the video showed that he did in fact stop at the intersection. So the video in that case clearly showed that he stopped and did not make a stutter stop. In any event, I'll finish. I think there was basically two reasons here. First of all, the judge used this to compare his findings. He didn't make the findings based upon the Google Maps. And the second thing is the officer did not have reasonable or probable cause or reasonable suspicion to stop this vehicle for what he said because this defendant didn't do that, did not stutter stop, made a clear stop, and the court found that clearly from the video. So for those reasons, we would like the decision to stand. Thank you, counsel. Regarding the trial judge's best estimate and then the use of the Google Street View to confirm an estimate only, the statute requires a specific distance, not an estimate. So what the judge did is to take his estimate and then turn it into a firm distance by using that Google Map. What is the measurement, the specific measurement then of three car lengths? Well, three car lengths, it depends on the length of each car, but a standard car is somewhere between about 18 and 25 feet in most cases. It depends what you're driving. My current car is a lot shorter than that, but other cars I've had are longer. So that is a specific measurement. Then when you say it was no more than three car lengths, I mean, there's a requirement of a specific measurement, but I don't see any offered by the state other than it was signaled less than 100 feet. And since we don't have any measurement out there, then the trial judge has to assess based on the video whether or not that's an accurate estimate. And so just viewing the video, forgetting about Google Maps, but you viewed the video and you disputed it and said, No, I think that's 100 feet. I think that's 105 feet or 103. Three big cars in a truck. You know what, then how do we, you know, would we be here if you didn't use, you didn't say, and I looked up at Google and it appears that it is. Would we be here? The judge said, No, I think three car lengths is 101.2 feet. Well, the three car lengths was my own wording in the brief. It was not a determination by the judge. It was not put forward by any party at the trial. It was my saying, looking at this video, one can see that it's not longer than three car lengths. I was not saying specifically a particular car, a particular length of car. That's my own, if you want to think of a semi-tractor trailer, most are 35 feet long. And if you look at that video, which is the objective evidence, you can see, and based on your own cars, for instance, if you're going to use my three car length estimate, that is not even close to 100 feet. And I could argue and we could talk about it all day, but the video is the objective evidence that you can look at and say, this is or is not 100 feet, and you can base that, one can base that on their own knowledge of distances, too, as a member of the court. You are allowed to make that determination of your own personal knowledge. You can take judicial notice of known facts and such. But the trial judge did not say it was 100 feet. He said, in my estimate, and then comparing it with this. So that's where the judge didn't believe it was 100 feet himself until the judge used the Google map. He said, well, then I believe it's 100 feet because that's what Google is supporting. Did he use that as demonstrative evidence? You could if a party, you know, it has to have it admitted in trial, you can use and the judge makes the determination that it's valid evidence to admit a trial. Sure. And regarding a judge on Rule 201, Rule of Evidence 201, a judge can sua sponte take judicial notice of a known fact or the judge's own files or that sort of thing. It doesn't have to be promoted by a particular party. Also under the case law, we have some that I mentioned earlier in the brief. An officer does not have to tell the defendant the reason for a stop or issue a ticket. In this case, the officer did write a warning ticket for the turn violation and he did say there was a traffic violation on the video. I don't remember the specific language. I unfortunately don't have it in the briefs. But there was some notice to the defendant at the time that he had committed some sort of traffic violation in the course of the warning. I have nothing else for the court. Do you have any questions? Thank you for your arguments. The court will stand at recess.